UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| SCOTT ADKINS, | ) | |
| | ) | |
| Movant, | ) | Cause Nos. 2:14CV403-PPS and |
| | ) | 2:14CV402-PPS |
| v. | ) | |
| | ) | Arising from 2:09CR32-PPS and |
| UNITED STATES OF AMERICA, | ) | 2:10CR10-PPS |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

In 2009 and 2010, Scott Adkins faced two separate prosecutions arising out of the seizure of heroin, a gun, and a computer from his Gary, Indiana residence. In Cause No. 2:09CR32, Adkins was convicted at trial of two counts: possession of heroin with intent to distribute and being a felon in possession of a firearm. In that case, Adkins was indicted with his long-time associate, Nathaniel Jordan, in whose household Adkins had long resided. In the other case — Cause No. 2:10CR10 — Adkins pled guilty to a charge of receipt of child pornography. I sentenced Adkins on the child pornography case to a term of 210 months in prison. [2:10CR10, DE 118.] The same day, I sentenced Adkins to a prison term of 90 months on the drug and gun case, with 78 months to be served concurrent with the sentence imposed in the child pornography case, and 12 months to be served consecutive to the term imposed in the child pornography case. [2:09CR32, DE 167.] On appeal, the Seventh Circuit affirmed Adkins' convictions and sentences, except for remanding as to one special condition of supervised release which

it found unconstitutionally vague and overbroad. [2:09CR32, DE 198-1; 2:10CR10, DE 135-1.]

Adkins has now filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. §2255 alleging six grounds for relief. He also seeks the appointment of counsel. I will first take up the request for the appointment of counsel before turning to Adkins' substantive claims.

### Appointment of Counsel for §2255

A petitioner seeking relief under §2255 litigant is not entitled to appointed counsel. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Under the statutory standard of 18 U.S.C. §3006A(a)(2)(B), I can appoint counsel "if the interests of justice so require." It is considered an abuse of discretion not to appoint counsel if, "given the difficulty of the case and the petitioner's ability, he could not obtain justice without a lawyer and he would have had a reasonable chance of success if he had been represented by counsel." *Taylor v. Knight*, 223 Fed.Appx. 503 (7th Cir. 2007), citing *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997). Given my analysis below of Adkins' grounds for relief, I readily conclude his §2255 motion does not warrant or require appointment of counsel.

### Ineffective Assistance of Counsel

Four of Adkins' six grounds for relief are claims of ineffective assistance of counsel, so it makes sense to review up front the standards applicable to that kind of claim. The Sixth Amendment to the U.S. Constitution guarantees criminal defendants the right to effective assistance of counsel for their defense. *Strickland v. Washington*, 466

2

U.S. 668, 687-96 (1984). Ineffective assistance claims are subject to the familiar two-part test from *Strickland*. The first prong of the test requires a showing that counsel's representation fell below an objective standard of reasonableness. *Id*. at 688. To succeed on the first element, Adkins must show some specific acts or omissions that fall below an objective standard of reasonableness and which could not have been the result of professional judgment. *Makiel*, 782 F.3d at 897; *see also United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). Taking context and circumstances into consideration, I will evaluate whether those specific acts or omissions fall "outside the wide range of professionally competent assistance." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013). My evaluation recognizes that lawyers do not have a duty to raise every argument or frivolous defense. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005) (quotation removed). And in reviewing their legal judgment and strategic choices, I cannot play "Monday morning quarterback." *Blake*, 723 F.3d at 879.

As for the second element of the *Strickland* paradigm, Adkins must show that he suffered prejudice as a result of ineffective counsel. *Strickland*, 466 U.S. at 690. This means that Adkins must show a reasonable probability that, but for counsel's failure or error, the results of Adkins' prosecution would have been substantially different. *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003). The Seventh Circuit defines reasonable probability as one that is sufficient to undermine confidence in an outcome. *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006).

3

It's important to note that although I am calling the required showings "first" and "second" for convenience, they need not be analyzed in that order, and it may be appropriate to end the analysis if I find there was no prejudice to Adkins:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697; *see also Berkey*, 318 F.3d at 772. Prejudice amounts to the highest and hardest hurdle. *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000). It is one thing for counsel to make a mistake, it is an entirely different thing for that error to prejudice the defendant.

### Ground One: Ineffective Assistance – Severance and Ground Two: Ineffective Assistance – Witness Terrance McCabe

Adkins' first ground for relief is that his trial counsel rendered ineffective assistance because he failed to move for a severance from his co-defendant Nathaniel Jordan in the heroin and gun case. His second ground argues that his trial counsel's did a poor job of examining Immigration and Customs Enforcement Special Agent Terrance McCabe which mandates the setting aside of his conviction on the drug and gun case. I will discuss these two grounds together because they are related, both turning on the same portion of the testimony of Agent McCabe.

4

McCabe was involved in the controlled delivery of the package containing heroin that was made to Adkins' residence and the subsequent search and seizure. It was McCabe's affidavit that supported the criminal complaint in which Adkins and Jordan were initially charged. At trial, McCabe gave extensive testimony about the investigation and Adkins' post-arrest statements.

McCabe's search warrant affidavit contains representations about a statement Adkins made to investigators on the day of the search. After indicating that Adkins had acknowledged that "both he and Nathaniel Jordan knew that the package would contain heroin," the affidavit attests that "Adkins also indicated that 1/3 of the heroin was theirs to use or sell and keep the profits and the rest of the heroin would be sold and the profit mailed back to 'Sammy' or 'Sonny', who resides in Canada and was the source of supply." [2:09CR32, DE 1 at ¶12.]

At trial, the government had McCabe read into evidence a report of Adkins' interview subsequent to the controlled delivery. [2:09CR32, DE 112 at 22-24.] The report included the representation that "Adkins told agents that he, Adkins, had knowledge of how proceeds would be split." [*Id*. at 24.] After the report was read into the record, I instructed the jury that the report constituted evidence only against Adkins and could not be considered with respect to the guilt or innocence of Jordan. [*Id*. at 31-32.] During his cross-examination of McCabe, Adkins' attorney attempted to impeach him by eliciting testimony that, consistent with the report that had been read into evidence, Adkins had "never said, I am going to get a percentage or a portion of the

5

drugs or the money relating to the sale of those drugs." [*Id*. at 46.] Counsel then attempted to contrast that with the more detailed contents of McCabe's search warrant affidavit concerning the split of the heroin, but ran into a *Bruton* problem because the affidavit's version of Adkins' statements implicated his co-defendant Jordan and so was subject to an objection.[1] This played out in a sidebar, in which I instructed counsel to proceed in a fashion "that doesn't implicate Mr. Jordan." [*Id*. at 48.]

Despite my admonition to Adkins' counsel, shortly thereafter, Agent McCabe ended up blurting out an incriminating reference to Jordan anyway. Here's what he said: "[Adkins] never actually said that he was going to, in fact, receive one-third of the profits; but he – in his – during his interview, he indicated that he was working with Adkins – working with Jordan." [*Id.* at 50-51.] The first two grounds of Adkins' §2255 motion both relate to this section of McCabe's testimony.

First, Adkins contends that his attorney was ineffective for failing to seek a severance of his trial from co-defendant Jordan. Joinder of the defendants was clearly proper under Fed.R.Crim.P. 8(b) since they were "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense." The Supreme Court has said that "[t]here is a preference in the federal system

---

[1] *Bruton v. United States*, 391 U.S. 123 (1968) "prevents the use of a codefendant's statement inculpating another defendant at a joint trial based on the codefendant's Sixth Amendment right to confront witnesses." *Moore v. Casperson*, 345 F.3d 474, 482 (7th Cir. 2003).

for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 538 (1993).

Not to move for a severance can't constitute ineffective assistance of counsel in every case in which there are multiple defendants. Because the factors that favor joinder actually make it preferable and not merely permissible, in order for a severance to be required those factors have to be overcome by the showing of a special need for severance. Under Fed.R.Crim.P. 14, severance is required "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

A claim that trial counsel rendered ineffective assistance because he did not seek a severance faces an uphill battle. "Defendants have a difficult burden when arguing that joinder would result in an unfair trial, especially where, as here, 'the crime charged involves a common scheme or plan' among the defendants." *United States v. Campbell,*, 480 Fed.Appx. 610, 615 (2nd Cir. 2012) (internal citations omitted). *Strickland* prejudice exists with respect to trial counsel's failure to move for severance only when 'there [is] a reasonable probability that the severance would have made a difference to the outcome of the trial." *Rastafari*, 278 F.3d at 689, quoting *Hernandez v. Cowan* , 200 F.3d 995, 999 (7th Cir. 2000).

In order to show that his lawyer was ineffective in not moving for a severance, Adkins needs to establish a severance would have been granted had one been

7

requested. The initial problem is that Adkins' only specific argument relating to severance is first articulated in his reply brief, so that the government was unable to respond to it.[2] Adkins points to the *Bruton* issue that arose during the testimony of Special Agent McCabe. He complains that because it was a joint trial, his counsel was unable to elicit testimony that incriminated Jordan. [2:09CR32, DE 238 at 5.] Adkins contends (in effect) that prejudice from the joint trial occurred when I cut off McCabe's testimony about the statement Adkins had made indicating that in receiving the heroin he was working with Jordan. [2:09CR32, DE 238 at 5.] But "[m]ere 'finger-pointing' at another defendant...is not sufficient to require severance." *United States v. Hughes*, 30 F.3d 557, 564 (7th Cir. 2002). "Given the presumption that counsel was competent, we cannot say that the failure to seek severance was not a tactical decision on the part of counsel." *United States v. Jackson*, 33 F.3d 866, 876 (7th Cir. 1994). This is especially so if Adkins' only basis for a severance was his desire to point the finger at Jordan which is, as just noted, an insufficient basis for severance. That counsel did not move for severance on this insufficient basis does not constitute unreasonable sub-standard performance by defense counsel.

In addition, in the context of the entire trial record, the limitation on Adkins' pursuit of testimony that would have violated the strictures of *Bruton* was not prejudice

---

[2] The reply also contains a number of issues not pled in the §2255 motion itself. "[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited." *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). I will not address those forfeited arguments.

as required by *Strickland*. The statement that I attempted to exclude merely *shared* blame with co-defendant Jordan. It was not exculpatory as to Adkins. And what's more, it ultimately came in anyway. If the same evidence would be admitted in a separate trial, Adkins is not able to demonstrate prejudice from the joint trial. *Rastafari v. Anderson*, 278 F.3d 673, 689 (7th Cir. 2002). So no prejudice is shown based on the joint trial, and certainly not a reasonable probability that a separate trial would have had a different outcome.

The §2255 claim also fails because it is highly unlikely that I would have granted a motion for severance. "[T]he benefits to the judicial system from a joint trial are substantial," and Adkins has offered no persuasive argument why those benefits "would not have predominated over the possibility of prejudice" to him, which is "a possibility present in any joint trial," and one that was addressed by appropriate limiting instructions to the jury about the necessity of separate consideration of the evidence and law applicable to each defendant. *Jackson*, 33 F.3d at 876. *See* 2:09CR32, DE 75 at 21, DE 116 at 83. Adkins' Ground One is without merit.

I am similarly unpersuaded by Adkins' Ground Two, his claim that his counsel was ineffective for his handling of McCabe as a witness. The cross-examination reflects no deficient performance by Adkins' counsel, but rather a reasonable attempt to impeach the witness despite a limitation imposed by me to avoid the unacceptable incrimination of co-defendant Jordan by Adkins' statement — which *Bruton* forbids. As a practical matter, although I immediately interrupted and directed counsel to ask

9

another question, the jury later heard the reference to Adkins working with Jordan anyway, and it was not stricken from the record nor any limiting instruction requested by Jordan's counsel. So the reference Adkins complains joinder robbed him of was actually included in the trial evidence after all.

Counsel first had McCabe confirm that, according to his affidavit in support of the criminal complaint, Adkins had "indicated that one-third of the heroin was at least, in part, going to be his to use or sell and keep the profits and the rest of the heroin would be sold and the profit mailed back to Sammy or Sonny." [2:09CR32, DE 112 at 49-50.] Then counsel succeeded in eliciting testimony from McCabe that Adkins had acknowledged knowing what was going to happen with the drug proceeds, but that he had not told the authorities that he was to receive any of the proceeds. [*Id.* at 45-46.] What counsel was attempting to do was impeach McCabe by contrasting his detailed and incriminatory affidavit account with his more generic testimony at trial. [*Id.* at 45-47; 49-50.] Counsel did a solid, professional job at pointing out the inconsistency within the confines of the problems imposed by *Bruton*.

In sum, Adkins' counsel rendered a more than competent effort to weaken McCabe's testimony by contrasting the variations in his different accounts of Adkins' post-arrest statement. Adkins simply fails to demonstrate that trial counsel's examination of Agent McCabe was deficient, much less that it was deficient in a manner that was reasonably likely the cause of Adkins' conviction. Ground Two is therefore denied.

## Ground Three: Right to Confront Witness Denedra Williams

Ground Three raises a challenge to testimony allowed at the sentencing hearing on the child pornography charge. The government intended to present the testimony of witness Denedra Williams, who was subpoenaed from her home in Helena, Montana but missed her flight and failed to appear. Instead, Homeland Security Agent Liam O'Neill testified that he had interviewed Denedra Williams, who is Nathaniel Jordan's granddaughter. Agent O'Neill testified as to what Williams had reported in the interviews concerning defendant Adkins.

Williams had recounted attempts by Adkins to have sexual intercourse with her when she was 9 or 10 years old, and an incident in which he masturbated in front of her. [2:09CR32, DE 177 at 39, 41.] Williams had also reported that other family members complained about sexual abuse by Adkins, but that Nathaniel Jordan had disbelieved their complaints. [*Id.* at 42.] Upset by that development, Williams for the first time disclosed to her own mother, Denedra Jordan, Adkins' behavior toward her as a child, and the two went to the Calumet City Police Department with the allegations. [*Id.* at 43.] Williams also told investigators in this case that her former foster sister had told her that Adkins raped her multiple times during the approximately seven months she lived with Williams' family (and Adkins). [*Id.* at 45-46.] With Williams not being available because of the missed flight, her mother, Denedra Jordan, testified at sentencing, confirming the Jordan family's long-time relationship with Adkins and

11

what she knew of the time period when Adkins lived in her house with her daughter when the abuse occurred.  [*Id.* at 98-104.]

Adkins' §2255 claim is that his Sixth Amendment right to confront the witnesses against him was violated with respect to the hearsay recounting of Denedra Williams' interview statements.  The testimony was offered in support of the imposition of a five-level Sentencing Guidelines enhancement under §2G2.2(b)(5) for a pattern of activity involving abuse or exploitation of a minor.  I found that the government had established by a preponderance of the evidence that Adkins had engaged in a pattern of abuse or exploitation of Denedra Williams, although I rejected as insufficient or unpersuasive the evidence offered as to the abuse of other minors.  [*Id*. at 137-139.]

Adkins' challenge to the testimony is a non-starter.  The rules of evidence do not apply to sentencing hearings, and a sentencing judge can consider hearsay so long as it is "'well supported and appears reliable.'"  *United States v. Richardson*, 812 F.3d 604, 605 (7th Cir. 2016), quoting *United States v. Heckel*, 570 F.3d 791, 795 (7th Cir. 2009).  "Moreover, as the Sixth Amendment's confrontation clause does not apply to a sentencing proceeding, the court may rely on the testimony or other statement of a witness even if that witness has not been subject to cross-examination by the defendant."  *United States v. Ghiassi*, 729 F.3d 690, 695-96 (7th Cir. 2013).

Adkins focuses on his inability to cross-examine Denedra Williams, but the hearsay recitations of her prior statements carried sufficient reliability to be admissible for sentencing purposes.  Indicia of reliability include considerations such as "the

provision of facts and details [or] corroboration by or consistency with other evidence." *United States v. Smith*, 674 F.3d 722, 732 (7th Cir. 2012). And "sentencing evidence need not be fully corroborated for a district court to credit it." *United States v. Sandidge*, 784 F.3d 1055, 1062 (7th Cir. 2015). The details of Williams' statements to Agent O'Neill, the corroboration of her mother's testimony, and the fact that the two women were willing years later to go the police and file a report making the same allegations about Adkins' conduct all provide sufficient indicia of reliability to support the admissibility of the challenged testimony for sentencing purposes. Adkins shows no right to relief on Ground Three.

### Ground Four: Ineffective Assistance – Faulty Advice on Penalties

In Ground Four, Adkins alleges that his trial counsel was ineffective by failing to clearly and correctly advise him of the maximum sentences he faced in the child pornography case. The original indictment charged Adkins with a single count of receipt of child pornography in violation of 18 U.S.C. §2252(a)(2). [2:10CR10, DE 1.] That offense carries a statutory minimum sentence of five years and maximum of 20 years, pursuant to §2252(b)(1). At his initial appearance and arraignment on January 29, 2010, Adkins was advised of the potential penalties. [2:10CR10, DE 7.] A superseding indictment later added a second count, a charge of possession of child pornography under §2252(a)(4)(B), for which there is no statutory minimum but a statutory maximum term of 10 years, or 20 years if visual depictions of prepubescent minors are involved. *See* §2252(b)(2). A new initial appearance and arraignment was held on

13

November 5, 2010, and again Adkins was advised of the applicable penalties. [2:10CR10, DE 34.] A second superseding indictment retained the same two charges [2:10CR10, DE 55] and the penalties were reviewed with Adkins at a third arraignment [2:10CR10, DE 64]. Adkins ultimately pled guilty to Count 1 of the second superseding indictment, the receipt charge. [2:10CR10, DE 83.] At his change of plea hearing, I explained the maximum and minimum penalties to Adkins. [*Id*.] The plea agreement Adkins signed set out the mandatory minimum term of five years' imprisonment and maximum of 20 years. [2:10CR10, DE 82 at 3.]

The gist of Adkins' claim is that his attorney misinformed him that, in the absence of a guilty plea, he could face up to 27 years in prison, when in fact the statutory maximum sentence was 20 years, or even 10 if he was convicted only of possession of pornography not involving depictions of prepubescent minors. [2:09CR32, DE 205 at 8.] Adkins contends that had he known the maximum term was 20 years, he would not have pled guilty, and that had he known that the possession charge carried a maximum of 10 years "he would have told counsel to fight to have his plea agreement changed to pleading guilty to possession only, not receipt." [*Id*.]

Adkins' argument is predicated on two letters he received in which his attorney attempted to *apply the Sentencing Guidelines* to various possible scenarios. The references to a sentence of up to 327 months derive from a potential Guidelines computation in the event of a conviction of both counts at trial. [2:10CR10, DE 205 at 11, 14.] Adkins' *statutory sentencing exposure* if convicted of both counts was a total of up to

14

30 years, since I have the statutory authority to run multiple terms of imprisonment consecutive to one another (as I did here).  *See* 18 U.S.C. §3584(a).³  Indeed, when there are multiple counts of conviction and the guideline range exceeds the statutory maximum for one of the counts, the Guidelines recommend that the sentences on each count of conviction run consecutive to one another. *See* U.S.S.G. § 5G1.2. So for counsel to lay out a scenario of up to 327 months in prison did not exceed what was possible for Adkins if he did not make a plea agreement to a single count.  And, in any event, "an inaccurate sentencing prediction alone is not deficient performance" for purposes of an ineffective assistance claim.  *Thomas v. United States*, 606 Fed.Appx. 840, 843 (7th Cir. 2015), citing *Bridgeman v. United States,* 229 F.3d 589, 592 (7th Cir. 2000) and *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996).

Furthermore, in addition to and regardless of his attorney's prognostications about the Guidelines, Adkins was advised by judges, including myself, on four separate occasions what the statutory maximum and minimum penalties were — at three arraignments and at the change of plea hearing.  What's more, the plea agreement *that Adkins signed* set out the statutory penalties applicable to Count 1.  In short, Adkins was awash in advice as to his maximum possible sentencing exposure, and his claim of ignorance and his buyer's remorse are unpersuasive to support the prejudice necessary

---

³ Adkins stipulated in his plea agreement that the pornographic material he received involved a prepubescent minor, raising a question whether the statutory maximum on Count 2 might have been elevated from 10 to 20 years. [2:10CR10, DE 82 at 4.] If so, Adkins could have received two consecutive 20-year terms for a total of 40 years' imprisonment.

to succeed with an ineffective assistance claim.  Adkins' argument satisfies neither the deficient performance nor the prejudice prongs of an ineffective assistance claim.  To the extent Ground Four contains language making a substantive claim that he was not informed of the charges against him and the applicable penalties, the review of the record I've already outlined shows such a claim to be entirely without merit.  No relief will be granted on Ground Four.

## Ground Five:  Illegal Search

Adkins argues in Ground Five that the search of his room in Jordan's house, including the search of his cell phone and computer, were unlawfully carried out.   It was in Adkins' bedroom that the cell phone and computer containing the child pornography were located.  (The heroin was found elsewhere in the house). A pretrial motion to suppress was filed by Adkins, an evidentiary hearing was held, and I denied the motion to suppress in a written opinion making factual findings about what occurred and explaining my determinations about the legality of the searches based on Adkins' express written consents to search.  [2:10CR10, DE 17.]  For several reasons, post-conviction relief on a motion under §2255 is not available to Adkins based on his Fourth Amendment argument.

First, the Supreme Court held in *Stone v. Powell*, 428 U.S. 465, (1976), that "a violation of the Fourth Amendment cannot be a ground for habeas corpus (or its equivalent for federal prisoners....the grant of a section 2255 motion) unless the defendant could not have presented a Fourth Amendment defense at trial." *Owens v.*

*United States*, 387 F.3d 607, 609 (7th Cir. 2004). In this case, Adkins not only *could* present his Fourth Amendment claims during the criminal prosecution, he *did*. Ground Five is barred by *Stone.*

Second, by entering a non-conditional plea of guilty to the child pornography charge, Adkins waived his Fourth Amendment claims. After the suppression ruling, Adkins entered a guilty plea in Cause No. 2:10CR10 that was not conditioned on his retaining the right to appeal his search and seizure claims. "An unconditional guilty plea precludes challenge to the denial of a motion to suppress because the 'guilty plea constitutes a waiver of non-jurisdictional defects occurring prior to the plea....This waiver includes Fourth Amendment claims.'" *United States v. Adigun*, 703 F.3d 1014, 1018-19 (7th Cir. 2012), quoting *United States v. Cain*, 155 F.3d 840, 842 (7th Cir. 1998).

Third, Adkins' plea agreement contained an express appeal waiver. When Adkins pled guilty to receipt of child pornography in Cause No. 2:10CR10, the case that grew out of the search of his bedroom that Ground Five complains of, Adkins waived collateral post-conviction review. The plea agreement "expressly waive[d] [his] right to appeal or to contest [his] conviction, sentence or the restitution imposed, including the manner in which [the] conviction, sentence or restitution was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel...including but not limited to, a proceeding under Title 28, United States Code, Section 2255." [2:10CR10, DE 82 at 6.]

Finally, the new challenge to the search and seizure is rejected because I stand by my analysis of their legality in denying the motion to suppress almost six years ago. For all these reasons, no relief will be granted on Ground Five.

### Ground Six: Ineffective Assistance – PSR Objections

Adkins complains in Ground Six that his counsel was ineffective because he "failed to perform his duties" when he returned a letter Adkins had written to him and advised Adkins that he could not serve as a conduit for presenting Adkins' own communications to the court. [2:09CR32, DE 205 at 16, 19.] Adkins' statement of Ground Six refers expressly to two documents in the court file of Cause No. 2:09CR32. The first [DE 93] is a letter Adkins improperly filed *pro se* (though he was represented by counsel), in which Adkins argued his views about the limited scope of his consent to search, contrary to my findings on the motion to suppress. The second [DE 94] is the order I issued about that letter, in which I reiterated my suppression determinations and advised Adkins that his communications with the Court or the Probation Office should be undertaken through his attorney.

The §2255 record Adkins has made doesn't include the letter he then mailed to his attorney, who returned it to Adkins, so I don't know what Adkins' letter said or what it asked counsel to do. As a result I am in no position to second-guess counsel's determination that the letter represented a further attempt by Adkins to get his *pro se* communications before the court. Even if Adkins is complaining that his attorney didn't raise a meritorious objection that Adkins identified to him, without more Adkins

18

has not demonstrated either deficient performance or prejudice. Effective assistance of counsel doesn't require an attorney to voice to the court every argument or issue the client identifies. *Hall v. Hulick*, 124 Fed.Appx. 457, 459 (7th Cir. 2005). To the contrary, counsel must use independent professional judgment in formulating litigation strategy, and refraining from making a frivolous argument is inherently reasonable professional performance by an attorney. *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013); *Hall*, 124 Fed.Appx. at 459.

The *Strickland* standard also carries a "strong presumption" that counsel's performance is reasonable. *Strickland*, 466 U.S. at 687. To prevail on an ineffective assistance claim, Adkins must point to specific acts or omissions of his attorney that demonstrate otherwise. *Id*. A conclusory complaint about his attorney's rejection of some unspecified communication from Adkins doesn't demonstrate unreasonable performance. Ground Six does not support any relief.

## **Conclusion**

Adkins' claims are so threadbare that there is no question he has not demonstrated any basis for setting aside his convictions or sentences. I will deny his motion to vacate, which I find to be without merit. Because I find the issues to be readily decided on the existing record without the need for an evidentiary hearing or further briefing, I will deny Adkins' motion for appointed counsel.

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULES GOVERNING SECTION 2255 PROCEEDINGS

11(a). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To obtain a certificate of appealability, Adkins must show that reasonable jurists could debate whether his petition should have been resolved differently. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Because I find that none of the six grounds presents even a debatable basis for relief from Adkins' convictions or sentences, I will deny a certificate of appealability.

**ACCORDINGLY:**

Scott Adkins' Motion for Assignment of Counsel [2:09CR32, DE 206; 2:10CR10, DE 146] is DENIED.

Scott Adkins' Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence [2:09CR32, DE 205; 2:10CR10, DE 145] is DENIED. The Clerk shall enter judgment accordingly.

A certificate of appealability is DENIED.

**SO ORDERED**.

ENTERED: May 9, 2016

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT